IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TIARA S. HARRIS, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:17-CV-8015-KOB |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION**

    This matter comes before the court on Plaintiff Tiara S. Harris' *pro se* "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." (Doc. 1.) Specifically, Ms. Harris alleges that, in the underlying criminal matter, her counsel's representation fell below the objective standard of reasonableness established in *Strickland v. Washington*, 466 U.S. 668 (1984), because her attorney failed to file a notice of appeal after she pled guilty to one count of aggravated identity theft. Because Ms. Harris has failed to allege facts to adequately support an ineffective assistance of counsel claim under 28 U.S.C. § 2255, the court WILL DENY Ms. Harris's motion.

**Background**

    In the underlying criminal case,[1] the Grand Jury indicted Ms. Harris on February 17, 2015 for 13 counts of wire fraud, access device fraud, and aggravated identity theft. (Criminal

---

[1] Unless otherwise specified, "Criminal Doc." refers to docket entries in the underlying criminal matter, *United States of America v. Harris*, 2:15-cr-00044-KOB-SGC, and "Doc." refers to docket entries in the instant civil case, *Harris v. United States of America*, 2:17-cv-08015-KOB.

1

Doc. 1.) Assistant Federal Public Defender James T. Gibson entered an appearance on Ms. Harris's behalf on March 6, 2015. (Criminal Doc. 9.)

The government subsequently offered to drop 12 of the 13 charges against Ms. Harris in exchange for a guilty plea on the single count of aggravated identity theft. On June 17, 2015, Ms. Harris signed a plea agreement acknowledging a series of alleged facts that the government was prepared to prove to satisfy all elements of the aggravated identity theft count had the case gone to trial. (Criminal Doc. 20.)

On June 17, 2015, after the court advised Ms. Harris of her rights in an open-court proceeding, Ms. Harris pled guilty to one count of aggravated identity theft. (Criminal Doc. 24.) On April 19, 2016, the court entered judgment against Ms. Harris as follows: (a) two years of imprisonment, followed by (b) one year of supervised release, and (c) restitution of approximately $19,000. (Criminal Doc. 27.)[2]

Almost a year after sentencing, Ms. Harris filed the instant habeas motion on April 18, 2017.[3] The motion "asserts that [Mr. Gibson] was ineffective due to the fact that he failed to file an appeal" following the sentencing. (Doc. 1 at 10.) To support her claim, Ms. Harris contends that "I was awaiting on the defense counsel to contact me after I was sentence[d], but he never contacted me, and then I was in transit to [the federal facility] where I am incarcerated." (Doc. 1 at 5.) She further contends that "counsel never expressly instructed [me] of the advantages and disadvantages of taking an appeal" (*id.* at 13), and that "[I] indicated that [I] desired to appeal the

---

[2] Although Ms. Harris's scheduled supervised release period expired in April of 2019, Ms. Harris's claim is not necessarily moot because courts must presume that "collateral consequences" accompany convictions, even after a sentence expires. *See generally Spencer v. Kemna*, 523 U.S. 1 (1998); *United States v. Tirado-Yerena*, 688 F. App'x 782 (11th Cir. 2017).
[3] The court cannot explain how the motion lay dormant on its docket but apologizes for the oversight.

restitution and the stipulated facts were not sufficient to prove beyond a reasonable doubt that she knew the identification and credit cards she used belonged to a real person. . . ." *Id.* at 14. Ultimately, Ms. Harris argues—in the third-person—that "she is actually innocent of the aggravated identity theft; and counsel failed to file a notice of appeal. . . . [H]er attorney disregarded specific instructions to file a notice of appeal[,] [t]o the extent she argues that her attorney failed to consult with her about an appeal discussing the advantages and disadvantages." (Doc. 1 at 15.)  For these reasons, Ms. Harris asks the court to "vacate her sentence and schedule a resentencing hearing." *Id.* at 15.

In response, the government provided a brief opposing Ms. Harris's motion and included an affidavit from Mr. Gibson, who testifies as follows:

> I timely advised Ms. Harris of her right to appeal. We discussed this matter on more than one occasion, including during a visit at the Cullman County Detention Center in Cullman, Alabama. . . . This conversation took place after her sentencing hearing but before the 14-day deadline to file a Notice of Appeal. Although Ms. Harris did request that we confer regarding a potential appeal, she did not request that I do so. In our last in-person conversation on the matter, at the Cullman County Detention Center, Ms. Harris advised that she did not wish for me to file an appeal.

(Doc. 7-1 at 1.)

The court issued its *McBride* order on July 23, 2020 and gave Ms. Harris until August 14, 2020 to submit to the court any additional evidentiary materials or legal arguments she may wish to offer regarding whether the motion is subject to summary disposition. Because Ms. Harris is no longer in BOP custody, the court directed the Clerk to send a copy of this order to Ms. Harris at the following address provided by her Probation Officer: Tiara S. Harris, 4141 Pinson Valley Parkway, Apt. 1301, Birmingham, Alabama, 35215.

On August 10, 2020, the Postal Service returned that mailing as "Refused." Upon further inspection, the court noticed that the Clerk inadvertently mailed a copy of the Order to Ms.

3

Harris at the prison where she is no longer in custody and not to the address provided in the July 23, 2020 Order.

Because Ms. Harris had not received notice of the *McBride* order, the court directed the Clerk to re-send a copy of the Government's response (doc. 7) and the court's 1st *McBride* Order (doc. 8) to Ms. Harris at the address listed above. The court gave Ms. Harris until September 14, 2020 to submit any additional evidentiary materials or legal arguments she may wish to offer regarding whether the motion is subject to summary disposition. (Doc. 10).

Ms. Harris has not otherwise provided any additional evidence.

**Analysis**

The Sixth Amendment to the United States Constitution requires that criminal defendants receive "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner who asserts an ineffective assistance of counsel claim must show (1) that the counsel's representation "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id.* at 688, 694. Courts must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

Under *Strickland,* a criminal defense attorney violates his client's Sixth Amendment rights if the attorney ignores his client's specific instruction to appeal a judicial decision. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Conversely, a defendant who instructs his attorney not to appeal a decision cannot later assert that, by following his instructions, his counsel performed deficiently. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). For situations falling between these two extremes, a two-question test determines whether an attorney's failure to file a notice of

appeal violates the Sixth Amendment. The court must first ask whether counsel consulted with the defendant about filing an appeal. If the attorney did, in fact, consult about an appeal with his client, then "counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Roe*, 528 U.S. at 478. If counsel did *not* consult with the defendant about an appeal, the second question asks whether the failure to consult with the defendant was itself reasonable under the circumstances. *Id.* at 479.

Under the second question, the Supreme Court determined that "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

In the instant case, assuming that Ms. Harris's allegations are true, and Mr. Gibson did not consult with her about an appeal, the court must evaluate whether his failure to consult with her about an appeal was reasonable under the circumstances. The court finds that even if Mr. Gibson did not consult with Ms. Harris about appealing her sentence (an allegation he vigorously denies), his actions were not unreasonable.

Although Ms. Harris vaguely asserts that she "indicated," apparently to no one in particular, that she wanted to appeal (Doc. 1 at 14), and that Mr. Gibson "disregarded specific instructions to file a notice of appeal [because he] failed to consult with her," her entire motion is predicated on the allegation that Mr. Gibson abandoned the case following the sentencing and that they never discussed the matter of an appeal. *See, e.g.,* Doc. 1 at 4, 15 (describing her theory as one of "attorney abandonment" and contending that "I was awaiting on the defense counsel to contact me after I was sentence[d], but he never contacted me.") Such allegations preclude the

5

possibility that she "demonstrated to counsel that [s]he was interested in appealing" (*Roe*, 528 U.S. at 480), because according to her alleged scenario, the two apparently never talked after the sentencing.

Alternatively, Ms. Harris could attempt to demonstrate unreasonableness by showing "that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)." *Id.* But Ms. Harris's alternative potential argument would also fail because Ms. Harris—after accepting a plea deal that dropped 12 counts and acknowledging that the government was prepared to prove every element of the remaining count—has raised no non-frivolous grounds for appeal.[4] In fact—aside from Mr. Gibson's alleged failure to consult with Ms. Harris following the sentencing—the instant case appears to precisely mirror the hypothetical the Supreme Court employed to demonstrate a defense counsel's quintessential *reasonableness* in failing to file a notice of appeal:

> [S]uppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal.

*Roe*, 528 U.S. at 479.

---

[4] The only potentially non-frivolous grounds the court can find in Ms. Harris's motion is a single sentence that the "government's . . . leaving the precise amount of restitution until the sentencing stage was unfair." (Doc. 1 at 10.) But to the extent that Ms. Harris bases her habeas petition on this ground, the court finds it meritless because several months before she pled guilty, Ms. Harris acknowledged that the "judge will require [you] to make restitution to any and all victims of the charge(s) to which [you] plead[] guilty," and "the amount of restitution and the schedule of payment will be based on the information within the Presentence Investigation Report." (Criminal Doc. 19 at 4.) In addition, the very first sentence of the plea agreement—which Ms. Harris also signed before she pled guilty—plainly states the precise amount of restitution the court eventually imposed on Ms. Harris. (Criminal Doc. 20 at 1.)

The Court in *Roe* also listed three possible factors for courts to consider when analyzing the reasonableness of an attorney's failure to discuss the matter of an appeal with his client: (a) "whether the conviction follows a trial or guilty plea . . . [b] whether the defendant received the sentence bargained for as part of the plea and [c] whether the plea expressly reserved or waived some or all appeal rights." *Id.* at 480. And in this case, all three factors weigh in favor of attorney reasonableness, as Ms. Harris pled guilty to one charge (Criminal Docs. 19, 20), received the exact sentence she bargained for (Criminal Doc. 20), and waived all her appeal rights except those pertaining to an upward-variance of the sentence (which did not occur here) or ineffective assistance of counsel. (Criminal Doc. 20 at 10.)

For each of these reasons, the court finds that Mr. Gibson did not act unreasonably by failing to consult with Ms. Harris regarding an appeal, if he in fact failed to do so.

Furthermore, to the extent that Ms. Harris argues that Mr. Gibson ineffectively represented her because "she is actually innocent of the aggravated identity theft" (Doc. 1 at 15), and the government could not prove all the elements of the aggravated identity theft count, the court rejects this argument for multiple reasons. First, although Ms. Harris couches the contention as an ineffective-assistance argument, the claim is instead a substantive argument about the sufficiency of the evidence; the court found the government established the factual basis for the guilty plea. Second, Ms. Harris expressly waived her right to appeal this issue as part of the plea agreement. (Doc. 20 at 9–10.) Third, the record plainly demonstrates that the court in great detail at the plea hearing informed Ms. Harris of all the elements of the crime for which she was charged as well as the government's burden of proof at trial, and she admitted that the government could prove those elements. Ms. Harris cannot now claim that she would not

have pled guilty if she had known about the elements of the crime when the record demonstrates that she *was* so informed and still pled guilty.

Lastly, the court notes that an evidentiary hearing for a habeas petition is unnecessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973). Instead, a habeas petitioner is only entitled to a hearing if the petitioner alleges facts that, if true, would prove he is entitled to relief. *Hernandez v. United States*, 778 F.3d 1230, 1232–34 (11th Cir. 2015); *United States v. Scott*, 325 Fed. App'x. 822, 824 (11th Cir, 2009). In this case, even if the court accepts as true Ms. Harris's interpretation of the events following her sentencing, she has provided no grounds for the court to conclude that she is entitled to habeas relief.

**Conclusion**

Because Ms. Harris has not alleged any facts to support her claim that Mr. Gibson's representation fell below the first prong of the standard espoused in *Strickland v. Washington*, 466 U.S. 668 (1984), the court **WILL DENY** Ms. Harris's motion. (Doc. 1.) The court will file a separate order accompanying this memorandum opinion.

**DONE** and **ORDERED** this 19th day of October, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE